714 So.2d 735 (1998)
Merlin SMITH, et al., Plaintiffs-Appellants,
v.
C. M. BROOKS, et al., Defendants-Appellees.
No. 97-1338.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1998.
Rehearing Denied June 9, 1998.
*736 William Henry Hallack, Jr., Dennis W. Hallack, Monroe, for Merlin Smith et al.
C.M. Brooks et al., Bossier City, pro se.
Before DOUCET, C.J., and SULLIVAN and GREMILLION, JJ.
SULLIVAN, Judge.
This suit to annul two tax sales is before this court a second time. In our first opinion, Smith v. Brooks, 96-1085 (La.App. 3 Cir. 2/5/97); 689 So.2d 544, we reversed the trial court's judgment dismissing plaintiffs' suit because the trial court had rendered said judgment before trial and not in response to any dispositive motion from either plaintiffs or defendants. We remanded for trial on the merits of (1) whether plaintiffs' predecessor-in-interest as mortgagee, American Bank and Trust Company, was entitled to notice of the two tax sales, and (2) the constitutionality of La.R.S. 47:2180.1, requiring mortgagees to file a request for notice of a tax delinquency in order for the sheriff to send the mortgagee such notice. For a complete recitation of the facts leading up to the trial court's first judgment, consult our prior opinion.
After trial on remand, the trial court upheld the validity of the tax sales and determined that the mortgagee was not entitled to actual notice of the tax sales because it failed to request notice of the tax delinquency pursuant to La.R.S. 47:2180.1. Relying on Barca v. Reed, 93-1081 (La.App. 1 Cir. 4/8/94); 635 So.2d 771, writ granted and remanded, 94-1166 (La.7/5/94); 639 So.2d 1184, the trial court determined that La.R.S. 47:2180.1 did not violate the requirements of due process under the Fourteenth Amendment to the United States Constitution.[1] The trial court dismissed plaintiffs' suit to annul the tax sales.
Plaintiffs appeal. For the following reasons, we reverse.

FACTS
Plaintiffs, Merlin B. Smith, Nathan Ed Wilson, and Robert J. McCormick, the successors-in-interest to the original mortgagee, American Bank and Trust Company, asserted that the sheriff conducted the May 27, 1987 and May 10, 1989 tax sales without giving the constitutionally-required notice of the tax delinquency to the mortgagee. The defendants, Cecil M. Brooks, Kathleen M. Brooks, Robert M. Brooks, and Paul G. Moak, countered that the mortgagee was not entitled to notice of the delinquency or sale because it failed to request notice of the delinquency as provided in La.R.S. 47:2180.1. Plaintiffs responded that this request-notice statute is violative of the mortgagee's due process constitutional right to notice under Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). The Mennonite court held that mortgagees or any party with a property interest whose "name and address are reasonably ascertainable" are entitled to "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id., 462 U.S. at 800, 103 S.Ct. at 2712. Plaintiffs asserted that, under Mennonite, the mortgagee, ipso facto, has a right to notice without having to perform the predicate act of filing a request for such notice.
*737 At trial, Merlin Smith testified that the Grant Parish public records do not indicate that notices of the tax delinquencies were sent to American Bank and Trust Company prior to the tax sales. He identified a judgment obtained by American Bank and Trust Company against the original property owner-mortgagor, Louisiana Forest Lands, which was rendered on September 5, 1989. The judgment was subsequently filed in the Grant Parish mortgage records. Smith acknowledged knowing about the tax sales prior to acquiring the judgment in 1993 from N.A.B. Asset Venture I, L.P.
Wayne Faraldo, the Grant Parish Chief Civil Deputy and Tax Collector, who has served in that capacity since 1961, testified that the sheriff's department has never notified mortgagees of impending tax sales. He said that, in accordance with this policy, no notice was sent to American Bank and Trust Company or any other lienholder in conjunction with the 1987 and 1989 tax sales. He acknowledged that, had the clerk of court produced a mortgage certificate, the mortgagee would have been revealed. He also said that the clerk's office has a procedure for interested parties to request notice of tax delinquencies, in compliance with La.R.S. 47:2180.1. However, he admitted that, despite the existence of the notice registry in the clerk's office, he does not check the clerk's office for such requests before sending notice to the record owner and advertising the sale. In other words, the sheriff's department does not comply with its obligations under La.R.S. 47:2180.1. He added that the sheriff's department sells between five and forty tracts of property for nonpayment of taxes each year.

LAW
The issues presented in this case were resolved in our recent opinion, Murchison v. Marzullo, 97-815 (La.App. 3 Cir. 12/10/97); 705 So.2d 1129. Therein, this court held that a party with an interest in property does not waive its constitutional due process right to notice of seizure and sale of the property by failing to request notice under La.R.S. 47:2180.1. The seizing creditor or seizing taxing authority must give notice to interested parties who are reasonably ascertainable or actually known. Id., citing Sterling v. Block, 953 F.2d 198 (5th Cir.1992); USX Corp. v. Champlin, 992 F.2d 1380 (5th Cir.1993); FDIC v. Lee, 933 F.Supp. 577 (E.D.La.1996); and Parkview Oak Subdivision Corp. v. Tridico, 95-0604 (La.App. 1 Cir. 11/9/95); 667 So.2d 1101, writ denied, 96-0622 (La.5/19/96); 672 So.2d 921. The successor-in-interest of a mortgage acquires the right of the original mortgagee to assert the seizing party's failure to give the original mortgagee notice in an action to annul the sale. Id.
The issue, then, is whether the original mortgagee, American Bank and Trust Company, was actually known or reasonably ascertainable. The record indicates that Louisiana Forest Lands, Inc. executed the collateral mortgage at issue on May 10, 1985. The mortgage was filed in the Grant Parish mortgage records on June 20, 1985. The mortgage, which is on a standard form, provides:

LOUISIANA FOREST LANDS, INC., ...
who declared and acknowledged that MORTGAGOR is justly and truly indebted unto any future holder or holders, of the note described below, appearing through and represented by Lisa Cutrer, who appears solely for the purpose of accepting the described note for the use and benefit of any future holder or holders thereof, herein called MORTGAGEE, domiciled in Baton Rouge, the Parish and State aforesaid whose permanent mailing address is declared to be Post Office Box 591, in the full sum of One Million and No/100 ($1,000,000.00) Dollars.
To represent this debt, MORTGAGOR has executed his promissory note dated this day to the order of and by the Maker, payable on demand at American Bank & Trust Company in the City of Baton Rouge, Louisiana, for the sum of One Million and No/100 ($1,000,000.00) Dollars, with interest at the rate of 12% percent per annum from date until paid.
It is clear from the record that a mortgagee exists with a "permanent mailing address" of P.O. Box 591, Baton Rouge, Louisiana. Although American Bank and Trust *738 Company is not specifically identified as the mortgagee on the face of the mortgage, its identity and status as mortgagee are "reasonably ascertainable" from a reading of the mortgage. The action of reading the mortgage, to ascertain the identity of American Bank and Trust Company as mortgagee, and sending notice would have satisfied the Mennonite requirement that the responsible state actor make reasonably diligent efforts to determine the identity of persons with property interests subject to deprivation. Mennonite Board of Missions, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." Id., 462 U.S. at 800, 103 S.Ct. at 2712.
At trial, Deputy Faraldo was asked to review the mortgage to determine the identity of the mortgagee. He responded, "Looks like American Bank and Trust Company." This admission by the person acting on behalf of the state to seize the property bolsters our conclusion that, under these circumstances, the mortgagee was reasonably ascertainable and entitled to notice.
Defendants' argument that plaintiffs' failure to request notice obviated the necessity of the sheriff sending notice is without merit. As the United States Fifth Circuit Court of Appeals held with reference to La.R.S. 13:3886, a request-notice statute applicable to foreclosure sales that is remarkably similar to La.R.S. 47:2180.1, the statute is supplementary to Louisiana's constructive notice scheme and "gives property owners, whose identities a reasonably diligent, responsible state actor could not reasonably ascertain, the opportunity to request such notice and thereby become ascertainable." Small Engine Shop, Inc. v. Cascio, 878 F.2d 883, 893 (5th Cir.1989). Such learned reasoning is applicable to La.R.S. 47:2180.1 and the request-notice scheme employed thereunder. Because we have determined that American Bank and Trust Company's identity was reasonably ascertainable, it was not obligated to file a request for notice. Even if American Bank and Trust Company had filed such a request, it would not in fact have been sent actual notice of the tax delinquency because the Grant Parish Sheriff's Department does not send such notices to those parties who file a request for notice with the clerk of court's office. Under these circumstances, the filing of such a request would be a useless act.
We note that this case is factually distinguished from McChesney v. Penn, 29,776 (La.App. 2 Cir. 8/20/97); 698 So.2d 705. In that case, the second circuit held that a mortgagee was not "reasonably ascertainable" where the mortgage was made payable to "any future holder" and (1) the mortgagee was neither named in the mortgage nor identified thereon as the mortgagee, and (2) the mortgage was not written on a form that indicated the mortgagee's identity. In the present case, American Bank and Trust Company was named in the mortgage and the mortgagee's permanent address is stated therein.
Finally, we address defendants' argument that plaintiffs' right to contest the validity of the March 27, 1987 tax sale was lost through the passage of the five-year peremptive period provided in La. Const. art. 7, § 25(C), which provides:
Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid *739 from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.
(Emphasis added.)
The first tax deed was recorded on June 3, 1987. This suit to annul the tax sale was filed on February 3, 1993, five years and eight months later. It appears, therefore, that defendants' position is correct. However, this court has held that the failure to give notice of the tax delinquency and sale to the record owner rendered the tax sale an absolute nullity. State, Through Dep't of Transp. & Dev. v. Knight, 93-767 (La.App. 3 Cir. 2/2/94); 631 So.2d 714, writ denied, 94-0571 (La.4/22/94); 637 So.2d 161; Murphy v. Estate of Sam, 527 So.2d 1190 (La.App. 3 Cir. 1988). In these cases, we held that the passage of the peremptive period had no effect on the record owner's right to seek nullification of the tax sale, deferring to the supremacy of the Fourteenth Amendment to the United States Constitution as interpreted in Mennonite.
For the reasons stated in Knight and Murphy, the failure to give notice to the mortgagee, a party with a significant property interest, no less important than that of the record owner, rendered the tax sales absolute nullities. Therefore, the five-year peremptive period did not operate to extinguish plaintiffs' right to sue to annul the 1987 tax sale.

DECREE
For these reasons, we reverse the trial court's judgment and render judgment in favor of plaintiffs and against defendants nullifying the two tax sales of the property at issue. This judgment shall not take effect until plaintiffs pay defendants the purchase price and all taxes and costs paid plus ten percent per annum interest on the price and taxes paid from the date of the respective payments. La. Const. art. 7, § 25(C).
Costs of this appeal are assessed against defendants, Cecil M. Brooks, Kathleen M. Brooks, Robert M. Brooks, and Paul G. Moak.
REVERSED AND RENDERED.
NOTES
[1] The supreme court remanded the Barca case to "allow the plaintiff to amend his petition to state a cause of action, if he can, and to further delineate the constitutional issues raised in his petition." Id. On remand, the trial court once again ruled that the plaintiff had no cause of action. In an unpublished opinion, Barca v. Reed, 96-0267 (La.App. 1 Cir. 12/20/96), the first circuit reversed and remanded. The first circuit concluded that plaintiff's federal due process rights were not waived by his failure to request notice of the tax delinquency pursuant to La.R.S. 47:2180.1. The supreme court then denied defendants' writ application. Barca v. Reed, 97-0212 (La.3/14/97); 690 So.2d 38. Therefore, the Barca case is now back in the trial court, with the plaintiff now able to assert his cause of action for deprivation of due process.